2008 WY 101

**JACOBS RANCH COAL COMPANY, a Delaware corporation, Appellant (Plaintiff),**

v.

**THUNDER BASIN COAL COMPANY, LLC, a Delaware Limited Liability Company, and Consolenergy, Inc., f/k/a Consolidation Coal Company, a Delaware corporation, Appellees (Defendants).**

No. S–07–0280.

Supreme Court of Wyoming.

Aug. 28, 2008.

---

Representing Appellant: Thomas P. Johnson and Andrea Wang, Davis Graham & Stubbs, LLP, Denver, Colorado; Amy Jo Stefonick, Rio Tinto Energy America, Gillette, Wyoming. Argument by Mr. Johnson.

Representing Appellee, Thunder Basin Coal Company, LLC: Stephen D. Bell, Dorsey & Whitney, LLP, Denver, Colorado; Randall T. Cox, Randall T. Cox, PC, Gillette, Wyoming. Argument by Mr. Bell.

Representing Appellee, Consolenergy, Inc.: No appearance.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Jacobs Ranch Coal Company ("Jacobs Ranch") appeals the district court's summary judgment decision that Thunder Basin Coal Company ("Thunder Basin") is not liable for surface royalty payments in this case because the surface royalty at issue is not a covenant running with the land. The district court also denied Jacobs Ranch's claims that it was entitled to indemnity from Thunder Basin. We will affirm the district court's decision.

---

1. The complaint in this suit listed Consolenergy, Inc., as a defendant, indicating it was formerly known as Consolidation Coal Company. The

## ISSUES

[¶ 2] Jacobs Ranch presents these issues:

1. Whether a surface royalty created when a coal company purchases the surface estate overlying federal coal is a covenant that runs with the land and binds successor coal companies.

2. Whether a surface royalty that runs with the land obligates the lessee of that land to pay the royalty when the lessee can more reasonably perform the obligation.

3. Whether, for purposes of a lessee's indemnity obligation, a lawsuit seeking unpaid royalties on the mining of coal "arises" from the lessee's mining of that coal.

Thunder Basin rewords the issues in this fashion:

A. Whether the district court correctly determined that Consol's promise to pay additional consideration for the purchase of property was personal to Consol and did not run with the land.

B. Whether the district court correctly determined that a landlord's promise to pay purchase money for real property does not bind a subsequent lessee.

C. Whether the district court correctly determined that [Thunder Basin] was not required to indemnify Jacobs Ranch for its contractual obligation to pay Consol's purchase money consideration for the property.

## FACTS

[¶ 3] In 1974, by a contract for deed, Stuart Brothers agreed to convey the surface estate of certain property in Campbell County, Wyoming, to Consolidation Coal Company ("Consol" [1]). In 1977, Stuart Brothers completed the conveyance to Consol by two separate warranty deeds, one for the parcel referred to as Section 17, and one for the

distinction between the two companies, if any, has no significance for purposes of this opinion, and we will refer to them collectively as Consol.

parcel referred to as Section 18.[2] The two deeds contain identical provisions by which Consol agreed to pay a "surface royalty" to Stuart Brothers:

As further consideration for the sale and conveyance of said lands by Grantor to Grantee, Grantee shall pay to Grantor a surface royalty for all coal mined, removed and sold by Grantee, its heirs, successors in interest and assigns from said lands of two cents (2) per ton of 2,000 pounds, or one-half of one percent (½ %) F.O.B. the mine, whichever is the greater.

Soon thereafter, Consol conveyed the Section 17 surface estate to Atlantic Richfield Company, which later conveyed it to a subsidiary, Thunder Basin. Consol conveyed the Section 18 surface estate to Kerr–McGee Corporation. The surface estate of Section 18 was eventually conveyed to Jacobs Ranch. At present, Thunder Basin owns the Section 17 surface estate, and Jacobs Ranch owns the Section 18 surface estate.

[¶ 4] The coal underlying Sections 17 and 18 was, and is, owned by the federal government. In 1992, the federal government leased the coal to Thunder Basin. To help define its rights to access the surface of Section 18, Thunder Basin in 1993 entered into a "Consent to Mine Agreement" with the predecessor to Jacobs Ranch. In 1999, Thunder Basin also entered into a "Surface Use and Lease Agreement" with Jacobs Ranch, which applies to approximately half of the surface of the Section 18 property. Thunder Basin began coal mining operations on the property in 2001.

[¶ 5] In the meantime, Stuart Brothers had been dissolved as a corporation, and its surface royalty interest was conveyed to the Stuart Family Mineral Limited Partnership ("Stuart Family").[3] In 2003, the Stuart Family made demand on Thunder Basin and Jacobs Ranch to pay the surface royalties it claimed were due. Thunder Basin and Jacobs Ranch jointly made one substantial pay-ment, but thereafter, were unable to agree on which company, if either, was liable for the surface royalty payments. The Stuart family subsequently filed suit against Thunder Basin, Jacobs Ranch, and Consol.

[¶ 6] In the course of the litigation, Jacobs Ranch entered into a settlement agreement with the Stuart Family. Their agreement included, among other provisions, a conveyance of the Stuart Family's surface royalty interest to Jacobs Ranch. Jacobs Ranch was then substituted as the plaintiff in this case. Jacobs Ranch dismissed all claims against itself, and all claims against Consol. It also dismissed its claims against Thunder Basin relating to Section 18, and those for past payments relating to Section 17. Jacobs Ranch maintained its claim against Thunder Basin for future surface royalty payments relating to Section 17. The district court ruled that Thunder Basin was not liable for the surface royalty payments, and granted summary judgment against Jacobs Ranch. Jacobs Ranch has appealed that decision.

[¶ 7] When the Stuart Family filed this suit, Jacobs Ranch claimed indemnity pursuant to the Surface Use and Lease Agreement, and tendered its defense to Thunder Basin. Thunder Basin rejected the tender, and refused to defend or indemnify Jacobs Ranch. In response, Jacobs Ranch filed claims against Thunder Basin based on theories of express, implied, and equitable indemnity. The district court denied Jacobs Ranch's indemnity claims, and Jacobs Ranch has appealed that ruling as well.

### STANDARD OF REVIEW

[¶ 8] Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002). "A genuine is-

---

2. By way of detail, the district court noted that the "parcels at issue are not actual full sections, but rather parts of sections. The parcel of property at issue in [S]ection 17 is 160 acres and the parcel in [S]ection 18 is 480 acres."

3. The Stuart Family acquired only 50% of the surface royalty. The other half was conveyed to the other Stuart Brother, James Stuart. He, or his successor, initially intervened in this litigation, but later dismissed those claims. As far as the record reflects, he is no longer involved in this case.

sue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Id.* Because summary judgment involves a purely legal determination, we undertake *de novo* review of a trial court's summary judgment decision. *Glenn v. Union Pacific R.R. Co.*, 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo.2008).

## DISCUSSION

### I. Is this surface royalty provision a covenant that runs with the land?

[¶ 9] Less than a year ago, we decided a similar case that raised the question of whether a surface royalty was a covenant running with the land. *Mathisen v. Thunder Basin Coal Co.*, 2007 WY 161, 169 P.3d 61 (Wyo.2007). In that case, we repeated this familiar standard for interpreting a deed as a type of contract:

"According to our established standards for interpretation of contracts, the words used in the contract are afforded the plain meaning that a reasonable person would give to them. When the provisions in the contract are clear and unambiguous, the court looks only to the 'four corners' of the document in arriving at the intent of the parties. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate." *Amoco Production Company v. EM Nominee Partnership Company*, 2 P.3d 534, 539–40 (Wyo.2000) (citations omitted).

*Mathisen,* ¶ 12, 169 P.3d at 64–65, quoting *Hickman v. Groves*, 2003 WY 76, ¶ 6, 71 P.3d 256, 258 (Wyo.2003). We then stated that the "party seeking to establish that a covenant runs with the land must demonstrate: 1) the original covenant is enforceable; 2) the parties to the original covenant intended that the covenant run with the land; 3) the covenant touches and concerns the land; and 4) there is privity of estate between the parties to the dispute." *Mathisen,* ¶ 14, 169 P.3d at 65–66, citing *Jackson Hole Racquet Club Resort v. Teton Pines Ltd. Partnership*, 839 P.2d 951, 956 (Wyo.1992).

[¶ 10] The surface royalty provision at issue in *Mathisen* reads as follows:

As further consideration for the sale and conveyance of said lands by Owner to Consol, Consol shall pay to Owner a surface royalty for all coal mined, removed and sold by Consol from said lands for two cents (2) per ton of 2,000 pounds or one half of one percent (½ of 1%) F.O.B. the mine, whichever is the greater[.]

¶ 11, 169 P.3d at 64. We first focused on the language obligating Consol to pay "a surface royalty for all coal mined, removed and sold by Consol." We concluded that the "obligation to pay the royalty is limited, by its plain language, to coal mined, removed and sold by Consol." Although Thunder Basin had mined, removed, and sold coal from the property, Consol had never done so. Thus, "because Consol did not mine any coal, it was not obligated to pay the Mathisens a surface royalty." *Id.,* ¶ 13, 169 P.3d at 65.

[¶ 11] Next in *Mathisen,* we focused on the language specifying that "Consol shall pay" the surface royalty. We observed that this "obligation belonged to Consol specifically and did not refer to Consol's successors or assigns." *Id.,* ¶ 15, 169 P.3d at 66. We concluded that this language failed to express the intent that the surface royalty provision was a covenant running with the land, and so did not satisfy the second requirement of a covenant running with the land. We therefore held that the surface royalty was a personal obligation between Consol and the Mathisens, and not a covenant running with the land.

[¶ 12] We apply the same analysis in interpreting the surface royalty language from the warranty deeds between Stuart Brothers and Consol. The language is slightly different, and the key difference is highlighted here:

As further consideration for the sale and conveyance of said lands by Grantor to Grantee, Grantee shall· pay to Grantor a surface royalty for all coal mined, removed and sold by Grantee, *its heirs, successors in interest and assigns* from said lands of two cents (2) per ton of 2,000 pounds, or one-half of one percent (½ %) F.O.B. the mine, whichever is the greater.

(Emphasis added.) This language provides that the obligation to pay surface royalties arises when Consol or "its heirs, successors in interest and assigns" mines, removes and sells coal from the property. Coal is being mined by Thunder Basin, Consol's successor in interest, giving rise to an obligation to pay surface royalties to the Stuart Family. The question, of course, is whether Thunder Basin, as Consol's successor in interest, is the one obligated to make those payments.[4]

[¶ 13] This surface royalty provision, like the one in *Mathisen*, specifies that Consol as "Grantee shall pay" the surface royalty. As in *Mathisen*, there is no language indicating that Consol's successors in interest or assigns would be bound by this provision. There is no language expressing the parties' intent that the obligation was a covenant running with the land. We therefore hold, as we did in *Mathisen*, that this surface royalty provision creates an obligation personal to Consol, and not a covenant running with the land.

[¶ 14] It is instructive to consider, as an illustration, the language of a surface royalty provision that was determined to be a covenant running with the land. In *Flying Diamond Oil Corp. v. Newton Sheep Co.*, 776 P.2d 618 (Utah 1989), Newton owned the surface estate, and Champlin Petroleum Company owned the mineral estate. Newton and Champlin had a "Surface Owner's Agreement," in which Champlin agreed:

> to pay or cause to be paid to the Land Owner in cash the value on the premises of two and one-half percent (2½%) of all the oil and gas and associated liquid hydrocarbons hereafter produced, saved, and marketed therefrom or allocated thereto.
>
> . . .
>
> The covenants to pay the sums provided . . . shall be covenants running with the surface ownership of the described premises and shall not be held or transferred separately therefrom, and any sums payable under this agreement shall be paid to the person or persons owning the surface of the described premises as of the date the oil or gas or associated liquid hydrocarbon production is marketed.
>
> . . .
>
> The easements, rights, and uses herein shall be binding upon the described premises and each and every part thereof, and the present and future owners thereof, and shall continue for the benefit of the present or future owners of the oil and/or gas and/or associated liquid hydrocarbon rights in the described premises and each and every part thereof and their agents, lessees, licensees, successors, and assigns, including any operator or unit operator, and for the benefit of other lands within any unit area within which the described premises, or any portion thereof may be included, and each and every part thereof.

*Flying Diamond*, 776 P.2d at 621. This language unequivocally, even repeatedly, expressed the parties' intent that the covenant would run with the land. The language used by the Stuart Brothers and Consol, in stark contrast, does not.[5]

---

4. It may help clarify the issue in dispute if we note an issue that is not in dispute. All of the parties agree that the benefits and burdens of the surface royalty provision in this case may be conveyed by express agreement. Thus, Stuart Brothers' interest in the surface royalty was conveyed to the Stuart Family, who in turn conveyed it to Jacobs Ranch. Conversely, when Consol conveyed the surface estate of Section 17 to Atlantic Richfield Company, the agreement expressly provided that Atlantic Richfield Company would assume Consol's obligation to pay the surface royalty. The district court ruled that this provision "is enforceable and that Atlantic Richfield Corporation will be required to indemnify Consol against any future surface royalty that becomes due on the Section 17 Land." That ruling was not appealed, and so is not in dispute.

In contrast, the documents by which Thunder Basin acquired the surface estate in Section 17 contain no express agreement for Thunder Basin to assume the obligation of paying surface royalties. In the absence of an express agreement, we must examine Stuart Brothers' warranty deeds to Consol to determine if the surface royalty is a covenant that runs with the land. If it is, then that obligation passed to Thunder Basin as owner of the surface. *Lingle Water Users' Ass'n v. Occidental Bldg. & Loan Ass'n*, 43 Wyo. 41, 49, 297 P. 385, 387 (Wyo.1931). (A covenant that runs with the land "inures to the benefit of, or must be fulfilled by, whatever party holds the land at the time when fulfillment is due.") If not, then that obligation did not pass to Thunder Basin, and it is not liable for the surface royalty payments.

5. Even if Stuart Brothers and Consol had unambiguously expressed the intent that this surface royalty should run with the land, that intent

■ [¶ 15] Although *Mathisen* seems to compel the conclusion that this surface royalty is not a covenant running with the land, Jacobs Ranch raises two main arguments to the contrary. First, Jacobs Ranch asserts that it has presented undisputed evidence that when the Stuart Brothers conveyed the property to Consol, both parties intended that the surface royalty would run with the land. That evidence includes the deposition testimony of Mr. Stuart, and that of a current Consol employee as to his understanding of what Consol intended when the deeds were executed. Jacobs Ranch maintains that we should give effect to that intent. We decline to do so. We cannot disregard the specific language of the deeds because the parties now assert, more than thirty years after the deeds were executed, that they intended something not expressed in the deeds. We instead rely on the plain and unambiguous language of the deeds, as other parties may have done in the years since the deeds were executed.

■ [¶ 16] To determine the intent of the parties, we must first look to the language of the written instrument, and turn to extrinsic evidence only when the terms "are ambiguous or are used in some special or technical sense not apparent from the contractual document itself." *Hickman,* ¶ 11, 71 P.3d at 259, quoting *KN Energy, Inc. v. Great Western Sugar Co.,* 698 P.2d 769, 776 (Colo.1985). *See also Boley v. Greenough,* 2001 WY 47, 22 P.3d 854 (Wyo.2001); *Mullinnix LLC v. HKB Royalty Trust,* 2006 WY 14, 126 P.3d 909 (Wyo.2006). The language by which the Stuart Brothers and Consol created this surface royalty is not ambiguous, and Jacobs Ranch does not contend that the language of succession (*i.e.,* "heirs, successors in interest and assigns") is used in some special or technical sense not apparent from the contractual document itself.

[¶ 17] Moreover, "[i]n interpreting unambiguous contracts involving mineral interests, we have consistently looked to surrounding circumstances, facts showing the relations of the parties, the subject matter of the contract, and the apparent purpose of making the contract." *Mathisen,* ¶ 12, 169 P.3d at 65, quoting *Boley,* ¶ 11, 22 P.3d at 858. We have just as consistently limited our consideration to the sort of extrinsic evidence listed there. We have explicitly said that "the parties' statements of what they intended the contract to mean are not admissible." *Mullinnix,* ¶ 13, 126 P.3d at 916–17. The evidence offered by Jacobs Ranch is inadmissible, as it constitutes only "the parties' own extrinsic expressions of intent." *Hickman,* ¶ 11, 71 P.3d at 260, quoting *KN Energy,* 698 P.2d at 777.

[¶ 18] Jacobs Ranch next maintains that "[n]o coal company would intentionally obligate itself to pay a royalty for coal mined by its competitors." It cites cases such as *Schaffer v. Standard Timber Co.,* 79 Wyo. 137, 331 P.2d 611, 616 (1958), for the proposition that a contract should not be interpreted to impose an absurd result. Jacobs Ranch asserts that the language of the surface royalty provision leads to an absurd result, creating an ambiguity sufficient to justify the use of extrinsic evidence to interpret the surface royalty provision. *See Busch Dev., Inc., v. City of Cheyenne,* 645 P.2d 65, 68 (Wyo.1982).

[¶ 19] To counter this argument, Thunder Basin asserts that Consol was free to agree upon the purchase price it paid for the property, and even if that purchase price appears unwise or unusual in hindsight, the agreement should be enforced as written. The district court accepted Thunder Basin's argument:

> The court finds that this provision of the 1977 deed is unambiguous: the parties intended that there be a long-term payment

---

alone is insufficient to create a covenant running with the land. In *Mathisen,* we listed four requirements for a covenant running with the land. One involves the parties' intent, and we decide the present case based on that requirement. Another requirement is that the covenant must touch and concern the land. In light of the Utah Court's discussion in *Flying Diamond,* 776 P.2d at 625–26, it is unclear whether the surface royalty provision between Stuart Brothers and Consol was a covenant that touches and concerns the land. We need not reach that question in this opinion, but we mention it to indicate that, even beyond the intent of the parties, there are additional legal issues raised by the surface royalty interests considered here and in *Mathisen.*

of the purchase price of the land conveyed, and that [the] purchase price was to relate to the amount of coal removed from the land. There is no genuine issue that an agreement to pay purchase money cannot be accomplished in the way it was here. An example provided by a fellow jurist illustrates: Party A agrees to purchase a parcel of land from Party B. Party B demands and Party A agrees that, in addition to a nominal initial payment, Party A will pay Party B $1 for each car that goes by on a nearby highway. There is no reason parties to a contract cannot make such an agreement. It may appear unusual, arbitrary, or even unwise, but it is not a nullity.

(Footnotes omitted.) We agree with the district court's explanation.

[¶ 20] Consol expressly agreed to pay the surface royalty as "further consideration for the sale and conveyance of said lands." It has long been recognized that "the promise of a purchaser of land to pay the purchase money cannot ... be enforced against his assignee, unless there is an agreement to that effect on the latter's part." *Lingle Water Users' Ass'n*, 297 P. at 389. There is no agreement on Thunder Basin's part to assume the surface royalty obligation, and so Consol's promise to pay a surface royalty as part of the purchase price cannot be enforced against Thunder Basin. Further, just as Consol was free to agree to an unusual purchase price when it acquired the property, so also was it free to seek a correspondingly unusual selling price when it conveyed the property. As noted above, the district court ruled that when Atlantic Richfield Company acquired Section 17, it expressly agreed to assume Consol's surface royalty obligations. This demonstrates that Consol had ways to avoid the "absurd" result of paying surface royalties on coal mined by another company.

[¶ 21] In sum, we reject Jacobs Ranch's contentions that the language of the surface royalty provisions is ambiguous. We conclude that it is plain and unambiguous, and does not create a covenant that runs with the land. We affirm the district court's decision that Thunder Basin is not liable for the surface royalty payments.

## II. Is Thunder Basin obligated to indemnify Jacobs Ranch?

### A. Express Indemnity

[¶ 22] Jacobs Ranch currently owns the surface estate of Section 18. Thunder Basin has access to the surface of about half of the Section 18 property pursuant to a 1999 "Surface Use and Lease Agreement" with Jacobs Ranch. This Agreement includes the following provision:

[Thunder Basin] agrees that it will conduct all operations hereunder in full compliance with all applicable state and federal laws, rules and regulations, including but not limited to, those pertaining to zoning, environmental protection and land reclamation. [Thunder Basin] covenants and agrees to indemnify, save harmless and defend [Jacobs Ranch] from and against all suits, actions, claims and demands in any manner arising from, incident to or growing out of [Thunder Basin's] operations hereunder and the use and occupancy of the Leased Premises.

Pursuant to this provision, Jacobs Ranch asserts an express indemnity claim against Thunder Basin.

[¶ 23] On summary judgment, the district court ruled against Jacobs Ranch, providing this explanation:

The clause requires Thunder Basin to indemnify Jacobs Ranch "against all suits, actions, claims and demands *in any manner arising from, incident to or growing out of Lessee's operations hereunder and the use and occupancy of the Leased Premises.*" (Emphasis added.) The claims against Jacobs Ranch for the payment of purchase money relative to the 1997 conveyance has no more than a tangential relationship to the coal mined on the property. The court finds that the payment of purchase money owed the plaintiffs (now Jacobs Ranch) by Jacobs Ranch was not arising from, incident to or growing out of Thunder Basin's operations, use or occupancy of the property. Indeed, the amount to be paid would depend upon the amount of coal mined, but the mining activities did not create the obligation, they

merely produced the gauge for the payment amount.

■■■ [¶ 24] We interpret an indemnity provision as we do any other contract, affording the language its plain meaning. If the provision is unambiguous, we look only to the "four corners" of the document to determine the intent of the parties. *Amoco*, 2 P.3d at 540. "Where there is an express indemnity provision, its parameters are derived from the specific language of [the] contract." *Diamond Surface, Inc. v. Cleveland*, 963 P.2d 996, 1002 (Wyo.1998). In addition, Thunder Basin has pointed us to this language from 42 C.J.S. § 15:

> A contract of indemnity should be construed so as to cover all losses, damages, or liabilities to which it reasonably appears to have been the intention of the parties that it should apply, but not to extend to losses, damages, or liabilities which are neither expressly within its terms nor of such character that it can reasonably be inferred that they were intended to be within the contract.

(Footnotes omitted.) Applying these standards, we agree with the district court that the claims in this case are not of such character as to be included within this indemnity provision. The Stuart Family, the original plaintiff in this case, brought suit against Jacobs Ranch, asserting that Jacobs Ranch had assumed Consol's obligation to pay the surface royalties relating to the Section 18 property. The claims arose from Jacobs Ranch's own contractual obligations. They are not arising from, incident to, or growing out of Thunder Basin's operations on or use of the land.

[¶ 25] Other language in this indemnity provision supports the conclusion that it is limited in scope. The Stuart Family did not bring claims against Jacobs Ranch because Thunder Basin breached its promise to "conduct all operations hereunder in full compliance with all applicable state and federal laws, rules and regulations." It did not bring claims "pertaining to zoning, environmental protection and land reclamation," and while the indemnity provision is expressly not limited to those topics, the presence of such a list does suggest the character of claims to which the indemnity provision was intended to apply. The claims brought are of a different character. We conclude from the language of this indemnity provision that it does not require Thunder Basin to indemnify Jacobs Ranch for claims relating to surface royalty payments.

### B. Implied Indemnity

■■ [¶ 26] As noted above, the 1999 Surface Use and Lease Agreement applies only to about half of the surface of the Section 18 property. Thunder Basin's access to the remainder is governed by a 1993 "Consent to Mine Agreement." That document contains no express indemnity provision, but Jacobs Ranch asserts that it "clearly implies an obligation for Thunder Basin to pay for any costs and damages that arise from its coal mining activities on the land." However, Jacobs Ranch's claim for implied indemnity suffers the same flaw as its claim for express indemnity: these claims do not arise from Thunder Basin's coal mining activities on the land, but rather, from Jacobs Ranch's own contractual obligations. The district court correctly ruled against Jacobs Ranch on this theory of implied indemnity as well.

### C. Equitable Indemnity

■■■ [¶ 27] Jacobs Ranch's third theory is equitable indemnification. We have previously said that "[i]mplied theories of indemnity are not viable in the face of an express indemnity agreement." *Wyoming Johnson, Inc. v. Stag Industries, Inc.*, 662 P.2d 96, 101 (Wyo.1983). As we explained, "when parties have entered into a written contract which includes an express indemnification provision, the express provision controls. It is inappropriate to enlarge or add rights of indemnification to the express provision by implication." *Id.* at 102. The claim in *Wyoming Johnson* was implied indemnity rather than equitable indemnity, but the same principle should apply under the circumstances of this case. Jacobs Ranch and Thunder Basin have an express indemnity agreement, which does not apply to claims

for surface royalty payments. It would be inappropriate to enlarge or add to Jacobs Ranch's rights of indemnification using an equitable indemnity theory. We therefore affirm the district court's summary judgment decision denying Jacobs Ranch's indemnity claim under the three theories of express, implied, and equitable indemnity.

[¶ 28]   Affirmed.