# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 69

APRIL TERM, A.D. 2020

June 5, 2020

PATRICIA ANN DOUGLAS, as Trustee of the
Patricia Ann Douglas Revocable Trust,

Appellant
(Plaintiff),

v.

JACKSON HOLE LAND TRUST,

Appellee
(Defendant).

JACKSON HOLE LAND TRUST,

Appellant
(Defendant),

v.

PATRICIA ANN DOUGLAS, as Trustee of the
Patricia Ann Douglas Revocable Trust,

Appellee
(Plaintiff).

S-19-0261, S-19-0262

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellant Patricia Ann Douglas:*

*James K. Lubing and Nathan D. Rectanus, Lubing Law Group, LLC, Jackson, Wyoming.*

*Representing Appellee Jackson Hole Land Trust:*

*Kendal R. Hoopes, Yonkee & Toner, LLP, Sheridan, Wyoming.*

**Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.**

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Jackson Hole Land Trust (JHLT) holds a conservation easement that limits the area that can be developed on Patricia Douglas' property.  Ms. Douglas sought a declaration from the district court that an accessway traversing her property is not a "driveway" that should be counted toward the total developed area.  The parties filed cross-motions for summary judgment.  JHLT argued that the accessway is subject to the easement's development limitation, and that it was entitled to costs and attorneys' fees under a section of the easement providing for recovery of costs incurred in enforcing its terms.  The district court granted summary judgment in favor of JHLT, concluding the accessway is a driveway subject to the easement's development limitation, but declined to award it costs and attorneys' fees.  Both parties timely appealed.  We affirm.

## ISSUES

[¶2]    The parties identify the following issues:

> 1.    Is the accessway traversing Ms. Douglas' property a driveway subject to the conservation easement's site development limitation?
>
> 2.    Do the easement terms provide for the award of costs and attorneys' fees for a declaratory judgment action?

## FACTS

[¶3]    In 2016, Ms. Douglas acquired 46.32 acres of land near the Snake River in Teton County, Wyoming.  The property is encumbered by a conservation easement that Ms. Douglas' predecessors in interest (O'Connor)[1] granted to JHLT.  Beginning in late 2011, O'Connor sought county approval for two related construction projects on the property—one for construction of an accessway leading from the county road to a "development area" and the other for a "two-unit non-subdivision Planned Residential Development" within the development area.

[¶4]    For the accessway project, O'Connor applied for a Grading and Erosion Control Permit (GEC Permit), a Floodplain Development Permit, and three Bridge Permits.  To address the environmental impacts of the project, as required by various Teton County Land Development Regulations (LDRs), O'Connor submitted an Environmental Assessment (EA) and a Mitigation Plan with the permit applications.  The county granted these permits in October 2012.

---

[1] The warranty deed conveying the property to Ms. Douglas identifies the grantors as "Four Legs Good, LLC . . . Otis and Associates, LLC . . . and David J. O'Connor and Lona Evelyn Williams, Co-Trustees of The Williams/O'Connor Family Trust."  We refer to these entities collectively as "O'Connor."

1

[¶5]   Meanwhile, O'Connor also applied for a Planned Residential Development Permit (PRD) to construct two residential units within the development area.  At the time, a county LDR required that at least 70% of the property remain "open space" after development.  As a means of enforcing this requirement, the county conditioned its approval of the PRD on the grant of a conservation easement over the property to a nonprofit entity.  Thus, O'Connor entered into a conservation easement agreement with JHLT and submitted it and an updated EA with his PRD application.  The PRD application identifies 55,792-square-feet of "maximum site development" consisting of 18,319-square-feet of development for the "access road" and 37,473-square-feet of "remaining site development," and the EA provides an "Open Space Analysis" that removes the "proposed driveway and development area . . . from the open space acreage."  The county issued O'Connor a PRD permit in January 2015.

[¶6]   The easement agreement states that it was "granted in satisfaction of a requirement of the Teton County, Wyoming Land Development Regulations in effect as of the date of this Easement for approval of a [PRD] non-subdivision development permit."  It limits the amount of "Site Development" that can occur on the property to 1.28 Acres, or 55,757 square feet, and defines "Site Development" as "any area of the Property, whether inside or outside of a Development Area, covered by buildings (exclusive of eaves), structures, Impervious Surfaces, porches, decks, terraces, patios, driveways, parking areas and/or corrals."  A map appended to the agreement identifies the "Development Area" consisting of 5.25 acres of the property, within "which the right to residential and other structures is reserved."  It also identifies an "Access Strip" consisting of 0.8 acres, in which O'Connor constructed the accessway from the county road to the development area.  The map states that "All existing roads and parking areas are contained within the access strip and Development Area."



[¶7]   After Ms. Douglas acquired the property, she filed a declaratory judgment action against JHLT, seeking a declaration that the accessway constructed by O'Connor is a "road," rather than a "driveway" and thus does not constitute "Site Development" subject to the easement's 55,757-square-foot development limitation.  The parties filed cross-motions for summary judgment, with JHLT seeking a declaration "that the 'access strip' . . . constitutes 'Site Development' under the Conservation Easement."  JHLT also moved to recover "costs, attorney[s'] fees, and other expenses" pursuant to Section 7.4 of the easement agreement, which provides for recovery of "the costs of enforcement of any of the terms" of the easement.

[¶8]   The district court granted summary judgment in favor of JHLT and denied Ms. Douglas' motion, concluding that the accessway leading from the county road to the development area was a driveway and, thus, subject to the easement agreement's site development limitation.  It reasoned the plain meaning of "driveway" applied to the accessway.   It also considered O'Connor's "PRD application documents that were contemporaneous with the creation of the conservation easement," which "reflect[ed] that the access road was considered a driveway at the time the easement was created and [] that the area occupied by that driveway was included as part of the total 'Site Development.'"  The court concluded "that the preceding owners' dedication of 18,319 square feet for the access road now limits [Ms. Douglas'] remaining development of her two 10,000 square foot homes[.]"

[¶9]   Despite granting summary judgment in JHLT's favor, the district court declined to award it costs and attorneys' fees.  It concluded that "[a]fter reviewing Section 7 of the easement in its entirety . . . Section 7.4 allows for recovery of attorney[s'] fees and costs for actions to remedy a violation of the easement."  It reasoned that "there [had] been no violation" because Ms. Douglas instituted her declaratory judgment action before "develop[ing] her property in a manner that could be deemed a violation."  Instead, the declaratory judgment action merely sought "interpretation of terms of the easement."

[¶10]  Ms. Douglas appealed the grant of summary judgment in favor of JHLT.  JHLT appealed the denial of costs and attorneys' fees and further requests that we grant it attorneys' fees on appeal.  We consolidated the appeals.

### STANDARD OF REVIEW

[¶11]  We review summary judgment rulings de novo, affording no deference to the district court's order.  *Gayhart v. Corsi*, 2020 WY 58, ¶ 11, 462 P.3d 904, --- (Wyo. 2020) (quoting *Wyoming Jet Ctr., LLC v. Jackson Hole Airport Bd.*, 2019 WY 6, ¶ 10, 432 P.3d 910, 914 (Wyo. 2019)).  "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Davison v. Wyo. Game & Fish Comm'n*, 2010 WY 121, ¶ 8, 238 P.3d 556, 560 (Wyo. 2010) (quoting *Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC*, 2008 WY 101, ¶ 8, 191 P.3d 125,

128 (Wyo. 2008)). "The evidence presented in a summary judgment proceeding must be admissible and competent." *Warwick v. Accessible Space, Inc.*, 2019 WY 89, ¶ 11, 448 P.3d 206, 211 (Wyo. 2019) (citing *Jones v. Schabron*, 2005 WY 65, ¶ 10, 113 P.3d 34, 37 (Wyo. 2005)).

[¶12]  Ms. Douglas and JHLT do not dispute the material facts.  Instead, their disagreement concerns interpretation of the easement agreement.  We review easements as we do questions of contract interpretation.  *Davison*, 2010 WY 121, ¶ 9, 238 P.3d at 560.

> The initial question of whether the contract is capable of being understood in only one way is a question of law for the court.  If the court determines that the contract is capable of being understood in only one way, then the language used in the contract expresses and controls the intent of the parties.  In such case, the next question, what is that understanding or meaning, is also a question of law.  When we review the district court's summary judgment decisions that a contract is capable of being understood in only one way and what that understanding is, we accord no deference to those decisions.

*M & M Auto Outlet v. Hill Inv. Corp.*, 2010 WY 56, ¶ 12, 230 P.3d 1099, 1104 (Wyo. 2010) (quoting *Examination Mgmt. Servs., Inc. v. Kirschbaum*, 927 P.2d 686, 689 (Wyo. 1996)).  Likewise, "when the determination of whether a party is entitled to attorney fees is based upon a contract providing for such fees, our usual rules of contract interpretation apply." *Thorkildsen v. Belden*, 2011 WY 26, ¶ 8, 247 P.3d 60, 62 (Wyo. 2011).

## DISCUSSION

### I.   *The accessway traversing Ms. Douglas' property is a driveway subject to the conservation easement's site development limitation*

[¶13]  Ms. Douglas argues that the accessway is not a "driveway" or "impervious surface" subject to the easement's site development limitation but, rather, that it "is a 'road' and thus cannot be considered 'site development.'"  She insists that the map attached to the easement stating that "All existing roads and parking areas are contained within the access strip and Development Area" supports this conclusion and that the district court erred in considering extrinsic, inadmissible evidence to reach its summary judgment ruling.  JHLT counters that the plain meaning of the term "driveway" encompasses the accessway at issue and that the district court "properly considered the 'context' in which the Conservation Easement was written" to support its conclusion.

4

[¶14]   Our goal in interpreting an easement is to determine the parties' intent according to the plain and ordinary meaning of the terms used in the agreement. *Four B Props., LLC v. Nature Conservancy*, 2020 WY 24, ¶ 33, 458 P.3d 832, 841 (Wyo. 2020) (citing *Davison*, 2010 WY 121, ¶ 9, 238 P.3d at 560).   We interpret the agreement "as a whole and read each provision in light of the others to find the plain meaning.  We avoid interpreting provisions in a way that makes the other provisions inconsistent or meaningless." *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 13, 379 P.3d 175, 180 (Wyo. 2016) (internal citation omitted) (citing *Claman v. Popp*, 2012 WY 92, ¶ 28, 279 P.3d 1003, 1013 (Wyo. 2012)).   Unless the terms of the agreement are ambiguous, "the easement language expresses and controls the drafting parties' intent." *Four B Props.*, 2020 WY 24, ¶ 34, 458 P.3d at 841 (citing *Leeks Canyon Ranch, LLC v. Callahan River Ranch, LLC*, 2014 WY 62, ¶ 12, 327 P.3d 732, 737 (Wyo. 2014)).   An agreement is ambiguous if it conveys a "double or obscure meaning." *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 23, 226 P.3d 889, 905 (Wyo. 2010) (citing *Wolter v. Equitable Res. Energy Co.*, 979 P.2d 948, 951 (Wyo. 1999)).   "When the provisions in the contract are clear and unambiguous, the court looks only to the 'four corners' of the document in arriving at the intent of the parties." *Claman*, 2012 WY 92, ¶ 26, 279 P.3d at 1013 (quoting *Hunter v. Reece*, 2011 WY 97, ¶ 17, 253 P.3d 497, 502 (Wyo. 2011)).

[¶15]   Even so, "[d]etermination of the parties' intentions requires . . . consideration of the context within which the contract was made." *Davison*, 2010 WY 121, ¶ 9, 238 P.3d at 560.  Thus, we "consider the circumstances surrounding execution of an agreement" such as "the parties' relationship, the subject matter of the contract, and the parties' apparent purpose in making the contract, to determine the parties' intent[], even when reviewing unambiguous contracts." *Ultra Res.*, 2010 WY 36, ¶ 43, 226 P.3d at 909 (citing *Mullinnix, LLC v. HKB Royalty Trust*, 2006 WY 14, ¶ 6, 126 P.3d 909, 915 (Wyo. 2006); *Moncrief v. Louisiana Land Exploration Co.*, 861 P.2d 516, 524 (Wyo. 1993); *Balch v. Arnold*, 9 Wyo. 17, 29, 59 P. 434, 436 (1899)).   "Any examination of the context within which the contract was drawn is limited to ascertaining the intent of the parties in making the agreement." *Davison*, 2010 WY 121, ¶ 9, 238 P.3d at 560.

[¶16]   The easement agreement plainly includes driveways in its 55,757-square-foot site development limitation, regardless of whether the driveway is located within the development area or elsewhere on the property. *See* Conservation Easement at 3 ("The term 'Site Development' means any area of the Property, whether inside or outside of a Development Area, covered by . . . driveways."), 8 ("The total amount of Site Development on the Property shall not exceed 1.28 Acres (55,757) square feet.").   The question is whether the plain and ordinary meaning of "driveway" applies to the accessway at issue. The easement agreement does not define the term, and Ms. Douglas argues that we should "not consider the dictionary definition for 'driveway' . . . because it improperly looks outside the plain language of the Easement."   To the contrary, we routinely consult dictionary definitions to ascertain the plain meaning of terms used in agreements. *E.g., Four B Props.*, 2020 WY 24, ¶ 40, 458 P.3d at 843; *Reichert v. Daugherty*, 2018 WY 103,

¶ 18, 425 P.3d 990, 995 (Wyo. 2018); *Berthel Land & Livestock v. Rockies Exp. Pipeline LLC*, 2012 WY 52, ¶ 17, 275 P.3d 423, 431 (Wyo. 2012). Merriam-Webster defines driveway as "a private road giving access from a public way to a building on abutting grounds." Merriam-Webster, https://www.merriam-webster.com/dictionary/driveway (last visited June 3, 2020). This definition applies to the accessway: it is a private road giving access from the public county road to buildings within the development area. Driveways are plainly subject to the easement's site development limitation.

[¶17] We also do not agree that the district court erred in considering affidavits of two JHLT employees and county records that were executed and submitted to the county contemporaneously with the easement agreement. First, we conclude that these materials are not inadmissible hearsay, as Ms. Douglas suggests. The affidavits are based on personal knowledge and contain specific factual statements about their involvement in crafting the JHLT easement agreement and their knowledge of application materials O'Connor submitted to the county. *See Braunstein v. Robinson Family Ltd. P'ship LLP*, 2010 WY 26, ¶ 14, 226 P.3d 826, 832 (Wyo. 2010) (explaining that affidavits relied on in summary judgment proceedings must state "specific supporting facts" based on personal knowledge, rather than bald opinions and conclusions); *see also* W.R.C.P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); W.R.E. 803(8), *Public Records and Reports*.

[¶18] These records shed light on the circumstances surrounding the execution of the easement agreement and demonstrate that the parties intended to subject the accessway to the agreement's site development limitation. As noted, courts may consider the circumstances surrounding the execution of an unambiguous easement agreement, including the relationship between the parties, the agreement's subject matter, and the purpose of entering into the agreement. *Ultra Res.*, 2010 WY 36, ¶ 43, 226 P.3d at 909. The agreement plainly states that it was "granted in satisfaction of a requirement of the Teton County" LDRs "for approval of a [PRD] non-subdivision development permit." We consider the agreement in the context of this stated purpose. *See Davison*, 2010 WY 121, ¶ 18 n.4, 238 P.3d at 563 n.4 (stating that it is proper to consider the purpose of an easement agreement in interpreting the terms of the agreement, regardless of ambiguity). O'Connor supplied the county with the easement and other materials to establish that the development would comply with county LDRs. These materials repeatedly identify the road within the access strip as a "driveway." *See, e.g.*, PRD Application ("The Open Space Easement shall be held by [JHLT]. We propose encompassing the entire parcel in the Open Space Easement, excluding the [] development area and [] access driveway . . . . The proposed open space equals 17.91 acres or 76.6% of the Base Site Area."); Updated Environmental Analysis ("The revised development plans consist of an accurate 2.19-acre driveway limit of disturbance that accommodates the construction of the entire driveway from [the county road] to the main residence."); GEC Permit Application ("Enclosed please find permit

applications for the O'Connor Driveway Project . . . ."); Mitigation Plan ("The proposed action involves the construction of a driveway as the means to access the approved development area."). These materials also make clear that the parties intended the driveway to be included in the easement agreement's site development limitation. *See, e.g.*, PRD Application (identifying 55,792-square feet of site development, consisting of 18,319-square feet for the access road and 37,473-square feet of "remaining site development").

[¶19] In sum, the accessway at issue is a driveway subject to the easement's site development limitation, and the district court did not err in granting summary judgment in JHLT's favor.[2]

## II.     *The easement terms do not provide for the award of costs and attorneys' fees for a declaratory judgment action*

[¶20] "Wyoming generally subscribes to the American rule regarding the recovery of attorney fees, under which . . . each party pays his or her own fees. A prevailing party may, however, be reimbursed for attorney fees when provided for by contract or statute." *Thorkildsen v. Belden*, 2012 WY 8, ¶ 10, 269 P.3d 421, 424 (Wyo. 2012) (citing *Weiss v. Weiss*, 2009 WY 124, ¶ 8, 217 P.3d 408, 410 (Wyo. 2009); *Forshee v. Delaney*, 2005 WY 103, ¶ 7, 118 P.3d 445, 448 (Wyo. 2005)). We again apply our general rules of contract interpretation to determine whether JHLT is entitled to costs and fees under the easement. *Pennant Serv. Co., Inc. v. True Oil Co., LLC*, 2011 WY 40, ¶ 24, 249 P.3d 698, 708-09 (Wyo. 2011). Our goal is to give effect to the intent of the parties, as reflected in the plain and ordinary language of the agreement. *Id.*

[¶21] The easement grants JHLT costs and attorneys' fees as follows:

> 7.4 *Costs and Attorneys' Fees.* In addition to any other damages to which [JHLT] may be entitled, it shall be entitled to recover the costs of enforcement of any of the terms of this Easement, including reasonable attorneys' fees, expenses and court costs, provided that it is, at least in substantial part, the prevailing party in any such action.

The issue is whether this declaratory judgment action constitutes an "enforcement of . . . the terms" of the easement.

---

[2] Ms. Douglas also argues that the intent of the party granting an easement should be given greater weight than the intent of the grantee. Ms. Douglas did not raise this argument in the summary judgment proceedings and, in any event, has provided no evidence that O'Connor intended the accessway to be excluded from the agreement's site development limitation. Moreover, Section 14.5 of the easement plainly states that it "shall be liberally construed in favor of the grant to [JHLT] to effect the Conservation Purposes."

[¶22]   The easement does not define the term enforcement, but it is commonly understood to mean "[t]he act or process of compelling compliance with a law, mandate, command, decree, or agreement." *Enforcement*, Black's Law Dictionary (11th ed. 2019).  This action does not seek to compel compliance with the easement.  Ms. Douglas does not request an order compelling any particular action, nor does JHLT request an order compelling her to do or refrain from doing something.  Instead, the parties merely seek an interpretation of the agreement.  *See Chapman v. Engel*, 865 N.E.2d 330, 333 (Ill. App. 2007) ("[A] fee-shifting provision tied to an action to 'enforce' a lease does not apply in a declaratory judgment claim asking that the parties' rights under the lease be declared.  The reason? Declaring rights is not the same as enforcing obligations.").  Had the contracting parties intended the costs and fees provision of the agreement to apply to an action seeking an interpretation of any of the terms of the agreement, they easily could have said so.  They did not.

[¶23]   We recognize that other courts have awarded attorneys' fees under contractual fee-shifting provisions in declaratory judgment actions.  *See, e.g.*, *Fletcher v. Lone Mountain Road Ass'n*, 452 P.3d 802 (Idaho 2019) (holding a declaratory judgment action seeking clarification of rights and responsibilities of subdivision property owners brought after neighborhood association made written demand upon plaintiffs to cease activities was an action to "enforce" terms of covenants for purposes of attorneys' fees award); *Careers USA, Inc. v. Sanctuary of Boca, Inc.*, 705 So.2d 1362, 1363-64 (Fla. 1998) (holding landlord was entitled to attorneys' fees in declaratory judgment action seeking clarification of amount of rent owed under provision entitling the prevailing party to attorneys' fees "in any litigation . . . to enforce the terms" of the lease).  We do not hold that the prevailing party in a declaratory judgment action is never entitled to costs and attorneys' fees under an applicable fee-shifting provision.  We merely hold that this fee-shifting provision does not apply to the circumstances at issue here.  *See Careers*, 705 So.2d at 1364 ("We caution that because the variation in the wording of attorney's fees provisions is virtually limitless, our decision today does not eliminate the responsibility of courts to scrutinize the language of a particular attorney's fees clause to determine whether fees are appropriate. . . . We merely hold that . . . a suit for declaratory judgment *may* constitute an action to enforce the terms and conditions of a . . . written instrument.") (emphasis added).  Thus, we hold that the district court did not err in declining to award JHLT costs and attorneys' fees and, accordingly, that JHLT is not entitled to recover attorneys' fees on appeal.  *See DeWitt v. Balben*, 718 P.2d 854, 864-65 (Wyo. 1986) ("[I]f attorney's fees are expressly authorized by contract or statute, such provision also applies to fees incurred at the appellate level.").

[¶24]   Affirmed.