2009 WY 153

**CRESCENT H HOMEOWNERS ASSOCIATION, INC., Appellant (Plaintiff),**

v.

**CRESCENT H ASSOCIATION OF HOMEOWNERS, INC., Appellee (Defendant),**

and

**Jones Holdings, LLC, a Wyoming Limited Liability Company, Appellee (Intervenor–Defendant).**

No. S–07–0275.

Supreme Court of Wyoming.

Dec. 14, 2009.

Representing Appellant: Brent R. Cohen, Rothgerber Johnson & Lyons, LLP, Casper, Wyoming; William Phillip Schwartz, Ranck & Schwartz, Jackson, Wyoming. Argument by Mr. Cohen.

Representing Appellee, Crescent H Association of Homeowners, Inc.: Jessica Rutzick, Rutzick Law Office, Jackson, Wyoming.

Representing Appellee, Jones Holdings, LLC: Jennifer Ann Golden and Andrea L. Richard, The Richard Law Firm, PC, Jackson, Wyoming. Argument by Ms. Golden.

Before VOIGT, C.J., and HILL, KITE, and BURKE, JJ., and JAMES, D.J.

BURKE, Justice.

[¶ 1]   This appeal involves a dispute between two homeowner associations regarding regulation of fishing and land use activities within Crescent H Ranch. Crescent H Homeowners Association, Inc. (First Filing Association) contends that it and Crescent H Association of Homeowners, Inc. (Fourth Filing Association) formed a contract that made them jointly responsible for creating and enforcing rules governing recreational activities on the Ranch. The Fourth Filing Association and Intervenor, Jones Holdings, LLC, assert that the Fourth Filing Association has the sole right to regulate these activities. The district court granted summary judgment in favor of the Fourth Filing Association and Jones Holdings. We affirm.

## ISSUES

[¶ 2]   The First Filing Association presents these issues:

1. Whether the district court erred in finding that the Rules and Regulations did not form a valid contract between the First Filing Association and the Fourth Filing Association.

   a. Whether the district court erred in finding that there was no consideration exchanged to support a binding contract.

   b. Whether the district court erred in relying on extrinsic evidence in finding that the Rules and Regulations were "merely an iteration of existing rules."

2. Whether the district court erred in finding that the First Filing Association and the Fourth Filing Association exceeded their authority by adopting the Rules and Regulations governing fishing and other recreational amenities at Crescent H Ranch.

   a. Whether the district court erred in considering the issue of authority in the context of a contractual dispute.

   b. Whether the district court erred in ignoring the authority granted to the First Filing Association and the Fourth Filing Association under their CC & Rs to adopt the Rules and Regulations.

3. Whether the district court erred in ruling that the Fourth Filing Association, as assignee of the Licensor, has sole authority to regulate fishing and other recreational amenities at the Crescent H Ranch.

### FACTS

[¶ 3] The 1,300 acre Crescent H Ranch in Wilson, Wyoming is home to two residential developments, the First Filing development and the Fourth Filing development. The Crescent H Guest Ranch (Guest Ranch) sits on an approximately 55 acre tract of land in the Fourth Filing development. The origin of the fishing and recreational use rights at issue in this case dates back to the early development of the Crescent H Ranch residential properties by Donald H. Albrecht. Mr. Albrecht purchased the Crescent H Ranch in 1964 and then in 1981 conveyed it to Rivermeadows Associates, Ltd. (RMA), a limited partnership of which Mr. Albrecht was the sole general partner. Mr. Albrecht and RMA continued to operate the Guest Ranch and, in 1985, they filed a "Declaration of Covenants, Conditions and Restrictions for Crescent H Guest Ranch" and began developing the First Filing residential subdivision.

[¶ 4] With the purchase of a lot in the First Filing development, each purchaser received fishing rights, along with other amenities including access to Guest Ranch services and access to hiking trails. The fishing and recreational use rights conveyed varied among the First Filing homeowners, both in terms of the rights and amenities conveyed and in the manner in which the rights were documented. The variations in the fishing and recreational use rights came to a head in the mid–1990s as a result of RMA's bankruptcy in January 1995. Several First Filing homeowners initiated an adversary proceeding in Bankruptcy Court to confirm their fishing and recreational use rights. The homeowners' adversary proceeding was resolved pursuant to a Settlement Agreement Resolving Homeowners Issues (Bankruptcy Settlement), dated June 23, 1997. The parties to the Bankruptcy Settlement were the Bankruptcy Trustee, all First Filing homeowners, and Countryside I, LLC. Countryside was a party to the Bankruptcy Settlement because the Bankruptcy Court had in February 1997, prior to resolution of the homeowners' issues, approved the sale of Crescent H Ranch to Countryside.

[¶ 5] The Bankruptcy Settlement confirmed the homeowners' fishing and recreational use rights and provided for the creation and recording of a new Fishing License and a new Use Agreement that would supersede and replace all other instruments or provisions purporting to govern the fishing and recreational use rights. The Bankruptcy Settlement provided, in relevant part:

(a) *Fishing Licenses.* Upon entry of an order approving this settlement, Countryside will sell, grant and convey to each of the Homeowners a fishing license in the form of Exhibit B (the "New Fishing License"). The New Fishing License shall be an interest in real property and shall have provisions for appropriate recording in the real property records. * * *

(b) *Use Agreement.* Countryside and each of the Homeowners will execute a Use Agreement in the form of Exhibit C (the "New Use Agreement"). The New Use Agreement shall grant "Riparian Use Rights" (as defined therein), which shall constitute an interest in real property and shall have provisions for appropriate recording in the real property records.

[¶ 6] All First Filing homeowners consented to the Bankruptcy Settlement and the Bankruptcy Court issued an order approving the settlement. The Bankruptcy Court entered an Order of Dismissal with Prejudice of the homeowners' adversary litigation on April 20, 1998. In keeping with the terms of the Bankruptcy Settlement, Countryside issued to all First Filing homeowners new Fishing License and Use Agreements. Memoranda of the two Agreements were recorded in the Teton County land records.

[¶ 7] The new Fishing License and Use Agreements designated each respective homeowner as Licensee, and Countryside as Licensor. The new Fishing License Agreement reserved to the Licensor the authority and discretion to regulate the fishing rights, provided the regulations were "applicable on a nondiscriminatory basis to Licensor, its guests and all current and future licensees." The new Use Agreement contained a similar provision providing for regulation of the recreational use rights. Neither Agreement identified any other entity authorized to regulate fishing and recreational use rights.

[¶ 8] While the new Fishing License Agreement was being negotiated, finalized, and issued, Countryside, as the new owner of Crescent H Ranch, began development of the Fourth Filing residential subdivision. As required by the Bankruptcy Settlement, Countryside conveyed with each parcel fishing and recreational use rights in the form of the new Fishing License and Use Agreements. On June 25, 1997, Countryside filed a "Declaration of Covenants, Conditions and Restrictions for Crescent 'H' Ranch Parcels" for the Fourth Filing subdivision.

[¶ 9] In the summer of 1997, the two homeowner associations sent a letter to each of the property owners. The letter stated, in part:

In view of the changes in ownership associated with the numerous resales and sales of original "Crescent H First Filing" Lots, the sale of the residual portion of the Ranch to Countryside L.L.C. and the subsequent sales of certain large parcels and the creation of the new Crescent H Association of Homeowners for these new "Crescent H Ranch Parcels", it is an appropriate time to restate and codify the Rules and Regulations regarding use of the riparian lands, upland trails and First Filing Open Space and Ranch and Recreation parcels.

A copy of these Rules and Regulations is enclosed with this letter for your information and guidance.

A subsequent set of revised Rules and Regulations was circulated to the homeowners in July 1998. Neither the 1997 nor the 1998 set of Rules and Regulations is recorded in the Teton County land records.

[¶ 10] In December 2000, the Fourth Filing Association filed an action against Countryside for declaratory and injunctive relief, in which it challenged Countryside's recording of an amendment to the Fourth Filing CC & Rs that would remove the Guest Ranch from the Fourth Filing. The litigation was resolved with the execution of a Mutual Release and Settlement Agreement. The Settlement Agreement required the recording of amended CC & Rs and, upon sale of the Guest Ranch, the assignment to the Fourth Filing Association of Countryside's rights and obligations "to maintain, repair and operate the riding and recreation trails and the fishing amenities and the right to collect ranch and recreation fees."

[¶ 11] The Fourth Filing homeowners and Countryside executed the amended Fourth Filing CC & Rs and, on July 23, 2002, those CC & Rs were recorded in the Teton County land records. The amended Fourth Filing CC & Rs provided authority for the Fourth Filing Association to adopt and enforce regulations governing the fishing and recreational use rights. In 2002, the First Filing Association also amended its CC & Rs. Those amended covenants were recorded in the Teton County land records on October 11, 2002.

[¶ 12] In November 2002, Countryside sold its interests in the Crescent H Ranch, including the Guest Ranch, to Jones Holdings. Contemporaneous with that transaction, Countryside executed an Assignment of its regulatory rights under the Fishing License and Use Agreements to the Fourth Filing Association. Countryside reserved and assigned all other rights as Licensor under the Fishing License and Use Agreements to Jones Holdings.

[¶ 13] On June 2, 2006, the First Filing Association filed this action for declaratory relief seeking a declaration that the Rules and Regulations are a binding contract that requires the Fourth Filing Association to share regulatory authority of the Crescent H Ranch fishing and recreational use rights with the First Filing Association. Both parties filed motions for summary judgment. Jones Holdings, in an attempt to preserve its rights under the Fishing License and Use Agreements, filed a motion to intervene. The district court granted that motion. Jones Holdings also filed a motion for summary judgment. The parties completed additional discovery and summary judgment briefing and the district court heard argument on the motions.

[¶ 14] The district court granted summary judgment in favor of Jones Holdings and the Fourth Filing Association. In so ordering, the district court found that:

> [F]ishing and other recreational amenities on the Crescent H are controlled by the Fishing License and Use Agreements, which constitute enforceable easements on all parcels within the Crescent H. The easements dictate that the authority to regulate fishing and recreation lies in the hands of the Licensor, which is currently the Fourth Filing Association, that is, Defendant Crescent H Association of Homeowners, Inc. As Licensor, Crescent H Association of Homeowners, Inc. may regulate the amenities so long as it is done in a non-discriminatory manner.

The court specifically rejected the First Filing Association's claim that the Rules and Regulations entitled it to joint regulatory authority:

> The Court finds that the "Crescent H Ranch Rules and Regulations" do not constitute a valid contract binding on the homeowners associations and residents because there was no consideration exchanged; the document was merely an iteration of existing rules. Further, the Rules and Regulations exceeded the authority of the parties who promulgated the rules by attempting to grant both homeowners associations the power to regulate recreation amenities. Such an assignment of rights does not conform to the requirements of the Fishing License and Use Agreements.

The First Filing Association filed this appeal.

### STANDARD OF REVIEW

[¶ 15] Our standard of review for summary judgment is well established:

> Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002). "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Id.* Because summary judgment involves a purely legal determination, we undertake *de novo* review of a trial court's summary judgment decision. *Glenn v. Union Pacific R.R. Co.*, 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo.2008).

*Jacobs Ranch Coal Co. v. Thunder Basin Coal Co.*, 2008 WY 101, ¶ 8, 191 P.3d 125, 128–29 (Wyo.2008). This standard applies equally in actions for declaratory judgment. *See, e.g., Laughter v. Board of County Comm'rs for Sweetwater County*, 2005 WY 54, ¶ 9, 110 P.3d 875, 879 (Wyo.2005). *See also Coffinberry v. Board of County Comm'rs of County of Hot Springs*, 2008 WY 110, ¶ 3, 192 P.3d 978, 979–80 (Wyo.2008).

[¶ 16] In reviewing a summary judgment, the Court examines the record from the vantage point most favorable to the party opposed to the motion, giving that party the benefit of all favorable infer-

ences that may be fairly drawn from the record. *Vollan v. Wyoming Bd. of Dental Examiners,* 2007 WY 132, ¶ 5, 165 P.3d 103, 104 (Wyo.2007). The Court evaluates the propriety of the judgment using the same standards and same materials used by the district court. *Id.* The Court accords no deference to the lower court decision. *Id.* The Court may uphold a grant of summary judgment upon any proper legal ground finding support in the record. *In re HC,* 983 P.2d 1205, 1209 (Wyo.1999) (citing *Ahearn v. Anderson–Bishop Partnership,* 946 P.2d 417, 422 (Wyo.1997)).

## DISCUSSION

■ [¶ 17] The material facts are generally not in dispute. The parties differ as to the legal significance of those facts. The Fishing License and Use Agreements at issue resulted from settlement of an adversarial bankruptcy proceeding initiated by several of the homeowners in Crescent H Ranch, First Filing. The Bankruptcy Settlement detailed the background leading to the settlement:

> C. The Homeowners each own real property and improvements on land adjacent to the Property, which was originally part of the Crescent H Ranch. The Homeowners purchased their properties at various times over the past fifteen years. In connection with the sales, and as an inducement thereto, the Debtor and its officers and agents, including Donald H. Albrecht and his sons Scott Albrecht and Richard Albrecht, granted the Homeowners various fishing and access rights to the Property as well as rights to use the amenities connected with the Crescent H Guest Ranch (collectively, the "Fishing, Riparian Use and Guest Service Rights").
>
> D. The documentation of the Fishing, Riparian Use and Guest Service Rights varied substantially among the Homeowners. Although most, but not all, of the grants of Fishing Rights were reflected in legal documents, there were substantial differences. Thus, (i) some documents were signed and notarized, some signed, and some unsigned; (ii) the rights granted and various conditions for use differed, as did other terms of the agreements, and (iii) some rights were recorded, some rights were not recorded but are described in recorded documents, and some rights were unrecorded. In all, there are several combinations of rights and claims. As for the Riparian Use and Guest Service Rights, there were fewer written agreements, and some variation in those that do exist.
>
> E. The legal status of the fishing licenses is complex. The legal issues include, but are not limited to: (i) whether the grants give rise to interests in real property or revocable licenses, (ii) whether the grants are executory contracts which could be rejected in bankruptcy, (iii) whether some of the grants can be avoided because of inadequate documentation or based on the avoidance powers of sections 544 et seq. of the Bankruptcy Code, (iv) whether, assuming the interests can ordinarily be revoked or avoided, the Trustee can assert such rights in this case since the estate is solvent and, in any event, whether the Homeowners have various legal or equitable defenses, (v) whether, assuming some interests can be revoked or avoided, this gives rise to damage claims of the Homeowners and, if so, how damages might be determined. There is very little authority on any of these questions, and it cannot be gainsaid that litigation would be lengthy, complex and expensive. In addition, one possible outcome, is that different Homeowners and neighbors would wind up with significantly different rights. The issues regarding the Riparian Use and Guest Services agreements include validity, enforceability, ability to reject, and damages.
>
> F. To confirm their Fishing, Riparian Use and Guest Service Rights, many of the Homeowners joined in filing an adversary proceeding in the Bankruptcy Court, entitled *MacLean, et al. v. Rivermeadows Associates, Ltd.,* (No. 96–1011), on October 17, 1996. Thereafter, the Trustee and several of the Homeowners entered into a tolling agreement with respect to the rights of the Trustee in such matters, with a view to attempt[ ] to negotiate an overall resolution of these issues. These negotiations were initially conducted between the Homeowners and Countryside, since the

Trustee believed Countryside, as the prospective purchaser, had the paramount interest in any arrangement which was to extend into the future. Thereafter, the Trustee participated actively in the final negotiation and documentation of these matters.

G. On June 13, 1997, the Bankruptcy Court entered an order approving the sale of the Property to Countryside's predecessor, Countryside, LLC. Under the Court's order, the sale shall not be free and clear of the Fishing, Riparian Use and Guest Service Rights alleged by the Homeowners.

H. The parties have entered into this Agreement to settle and resolve all matters connected with the Homeowners' Fishing, Riparian Use and Guest Service Rights.

[¶ 18] With regard to the new fishing licenses, the parties specifically agreed that:

(a) *Fishing Licenses.* Upon entry of an order approving this settlement, Countryside will sell, grant and convey to each of the Homeowners a fishing license in the form of Exhibit B (the "New Fishing License"). The New Fishing License shall be an interest in real property and shall have provisions for appropriate recording in the real property records. The order approving this Settlement Agreement (the "Approval Order") shall specifically provide that the New Fishing Licenses are valid, effective, and enforceable.

The sample license attached to the Bankruptcy Settlement identified Countryside as the "Licensor." As mentioned previously, all First Filing homeowners consented to the Bankruptcy Settlement and it was approved by the Bankruptcy Court. Countryside, as Licensor, subsequently issued the Fishing License and Use Agreements to all First Filing homeowners. Similar Agreements were subsequently issued to Fourth Filing property owners. These facts are undisputed.

[¶ 19] It is also undisputed that the Fishing License Agreement identified the Licensor as the regulating authority:

Licensor shall have the power to regulate the fishing rights and privileges so long as such regulations are applicable on a non-discriminatory basis to Licensor, its guests and all current and future licensees. The regulations which may be adopted by Licensor may include, but are not limited to:

a. If in the opinion of Licensor the fishing pressure becomes excessive, to the extent that the quality of the fishing experience is adversely affected, Licensor may restrict fishing to limited sections of the Fishing Waters for specific times or days in order to avoid overcrowding of, or excessive pressure on, the fishing habitats. Licensor may also limit or restrict (but not prohibit) fishing as may be required if the number of persons fishing threatens the wildlife habitat or otherwise may interfere with the tranquil and bucolic nature of the Riparian Lands.

. . .

c. Licensor may prohibit Licensee from fishing along a one hundred-yard stretch of water in front of a residence, provided, however, that Licensee may fish along the opposite bank.

The Fishing License Agreement does not purport to convey regulatory authority to any entity other than the Licensor. It does, however, contemplate transfer of the Licensor's rights and obligations under the Agreement:

a. Licensor specifically reserves the right to transfer its rights and obligations under this Agreement to its successor or assigns, under an instrument specifically designating such successor or assigns as a successor or assign under this Agreement, and any new successor or assign will be subject to the obligations and receive the benefits of the terms and conditions contained herein.

[¶ 20] It is undisputed that Countryside was the original Licensor identified in the Bankruptcy Settlement. Countryside subsequently executed two Assignments of its rights and obligations as Licensor. The Assignment to Jones Holdings assigned all rights of Countryside as Licensor but specifically excluded "all rights assigned" to the Fourth Filing Association "by assignment dated November 21, 2002." In that docu-

ment, Countryside assigned to the Fourth Filing Association:

> [T]he right to regulate fishing on the Fishing Waters at the Riparian Lands of Crescent H Ranch, as specifically defined in the Fishing License Agreements and reserved to Assignor (as Licensor), under Section Two of such Fishing License Agreements executed with landowners at Crescent H Ranch, except that the exercise of any assigned rights under Section Two (b) of the Fishing License Agreements shall require written consent of Assignor or its successor. This Assignment shall also include the right to enforce collection of the Base Annual Fees as provided in Section Four of the Use Agreements.

Based upon these Assignments, the district court determined that Countryside had assigned its rights to regulate "fishing and recreation" to the Fourth Filing Association. The First Filing Association does not challenge this finding.[1]

[¶ 21] In summary, it is undisputed that the new Fishing License and Use Agreements provided regulatory authority to the Licensor. The First Filing Association has never been designated as a Licensor or been assigned any rights as a Licensor "under an instrument specifically designating such successor or assigns as a successor or assign" as required by the new Fishing License and Use Agreements. The First Filing Association does not dispute these facts. Instead, it bases its claim of joint regulatory authority upon a 1997 document entitled, "Crescent H Ranch Rules and Regulations." The First Filing Association contends that this document is a binding contract that requires the Fourth Filing Association to jointly share regulatory authority. The district court rejected that claim and so do we.

[¶ 22] There is no dispute that a 1997 document entitled "Crescent H Ranch Rules and Regulations" exists. There does not appear to be any dispute that it was amended in 1998. The parties differ on whether that

document is a contract that provides the First Filing Association with regulatory authority over fishing and recreation rights on the property.

[¶ 23] We note that the document does not have the usual indices of a contract. It is not signed by anyone. It does not identify the parties entering into the alleged agreement. It does not recite the specific consideration for the agreement or specify that the alleged agreement was supported by any consideration. The document does not reflect that there was any negotiated exchange of performance. The letter accompanying the document that was sent to the lot owners stated that the document was created "to restate and codify the Rules and Regulations."

[¶ 24] The First Filing Association contends that pursuant to the Rules and Regulations, the First Filing Association and the Fourth Filing Association "consented to forebear from exercising whatever rights they might unilaterally assert to regulate fishing and other recreational activities at the Crescent H Ranch." The First Filing Association, however, identifies no specific language in the Rules and Regulations that supports that allegation. More significantly, the First Filing Association ignores the plain and unambiguous language of the new Fishing License and Use Agreements.

[¶ 25] The Bankruptcy Settlement resulted from adversary litigation that was initiated by the First Filing Association lot owners in order to protect their fishing and recreational use rights in the property. That litigation culminated in a settlement mandating uniform Fishing License and Use Agreements. The Bankruptcy Settlement was signed by all First Filing lot owners and memoranda of the Agreements were recorded in the Teton County land records. The Bankruptcy Settlement was approved by the Bankruptcy Court and the adversary action was dismissed with prejudice.

---

1. Jones Holdings, who had also received an Assignment from Countryside, agrees with this finding: "The history and plain terms of the Fishing License and Use Agreements lead inevitably to the result reached by the District Court: the authority to regulate Crescent H Ranch fishing and recreational use rights is vested in the Fourth Filing Association. The Court should therefore uphold the District Court decision granting summary judgment to the Fourth Filing Association and Jones Holdings."

[¶ 26]  The Bankruptcy Settlement specifically states:

The New Fishing Licenses and New Use Agreements shall supersede and replace all existing fishing licenses, access rights and amenity use agreements of the Homeowners, and all such existing agreements shall be null and void.

As of April 1998, all First Filing property owners had agreed that their fishing and use rights were to be governed by the new uniform Fishing License and Use Agreements. Those Agreements gave regulatory authority only to the Licensor.  It is undisputed that the First Filing Association is not a Licensor.

[¶ 27]  The district court correctly determined that regulatory authority is governed by the new Fishing and Use Agreements and that regulatory authority has been assigned to the Fourth Filing Association.  The First Filing Association has failed to establish any genuine issue of material fact entitling it to joint regulatory authority.  In light of this determination, we need not address other issues raised by the First Filing Association. Summary judgment was properly granted.

[¶ 28]  Affirmed.