ORA LEE LANDES, RESPONDENT, v. GUY A. THOMPSON, TRUSTEE AND RECEIVER FOR MISSOURI PACIFIC RAILROAD, A CORPORATION, APPELLANT.—148 S. W. (2d) 78.

Kansas City Court of Appeals. January 6, 1941.

*Leslie A. Welch* and *Richard H. Beeson* for appellant.

*Clark & Krings* and *Robert L. Holder* for respondent.

CAMPBELL, C.—Plaintiff brought this suit to recover damages for personal injuries suffered by him about 9:50 P. M., on August

3, 1938, when he was struck by a freight car operated by the defendant. He recovered judgment in the amount of $1000, from which the defendant has appealed.

The single question presented on this appeal is whether or not the court erred in refusing defendant's request for directed verdict tendered at the close of all of the evidence.

Plaintiff was a night watchman and "order filler" for the Empire Storage & Ice Company, hereinafter called company. Two switch tracks of the Missouri Pacific Railroad extend substantially west from the south part of the plant of the company to and across Guinotte Avenue in Kansas City. Plaintiff's work day began at 9 o'clock P. M. The first half of each hour his work required him to be in the buildings of the company; the other half was devoted to inspecting cars standing on the aforesaid tracks and other tracks. The inspection consisted in examining the seals of the cars and ascertaining the kind of grain in each car. Plaintiff at the time here involved started on tour of inspection at 9:33 P. M., found two freight cars coupled together on the north switch track standing south of a building of the company and one freight car standing on the same track a short distance west of the two cars. He examined the seal on the north door of the west most of the two cars, ascertained the contents of the car, made a like examination of the next car to the east. He then went upon the track at the east end of the last mentioned car and stopped because he saw men in the street south of him and thereupon, as related by him, he stepped back, "and as I started to step back I turned my light out and—as quick as I saw them I turned my light out and started to step back around the cars, and just as I started to turn to go around the car I laid my hand over to the coupler to turn to get out of the way and just as I did there was a sudden jerk into the cars and, of course, it hit me, of course, and knocked me down onto the right side of my face and hit me in the back, of course, and bruised up my back and knocked me down between the runway and the car."

He further testified that prior to the accident he had not heard either bell or whistle and had not seen any member of defendant's switching crew or heard or seen anything indicating there would be a movement of the standing cars; that he had not known of switching operations being conducted after 9 o'clock; that in a few minutes after he was hurt the foreman of defendant's switching crew said that he had no cause to believe any one was on the track.

There was evidence showing defendant's employees in charge of an engine pushed cars eastward across Guinotte Avenue and struck the standing cars with more than ordinary force and violence and thus caused the standing cars to move eastward and strike and injure plaintiff. There was nothing in plaintiff's evidence indicating that any member of the switching crew knew of plaintiff's presence in the

yard. The plaintiff, however, contends the defendant was guilty of negligence because the switching crew had cause to apprehend plaintiff was likely to be upon the track or in such position that moving the standing cars suddenly and violently would injure plaintiff.

The plaintiff cites and relies upon the following cases in this jurisdiction. [Winkler v. Terminal R. Ass'n of St. Louis, 227 S. W. 625; Whiteaker v. Missouri Pacific R. R. Co., 15 S. W. (2d) 925; Willig v. Chicago B. & Q. R. Co., 137 S. W. (2d) 430.]

The plaintiff in the Winkler case was engaged in cleaning the inside of a club car. The evidence of both plaintiff and defendant "clearly established" that cleaners remained in the cars while they were being switched. Therefore, the defendant was under duty to "use such care in switching trains as not to cause injuries to such cleaners." The Whiteaker case was an action based on the humanitarian doctrine and does not aid us in determining the case at bar. The facts in the Willig case show the injured person, Willig, was the employee of a contractor engaged in building a bridge, part of a public road, over the track of the defendant. The train which struck Willig was a special train running 40 to 50 miles an hour. It was the practice for the defendant to notify Willig and his fellow workers "when any special train would run." The train was "three hours ahead of the time that Willig had been led to expect its arrival . . . ;" or it was a special train which the defendant had failed to inform the workmen "would be through." In both the Winkler and the Willig cases liability was predicated upon knowledge, actual or constructive, of the perilous position of the injured persons. There are statements in the opinions which seem to support plaintiff's theory, but such statements must be read in the light of the facts in judgment.

As stated, the evidence for plaintiff failed to show that the switching crew or any of its members knew or had cause to believe plaintiff was in the yard.

The foreman of the switching crew in his cross-examination said that he knew the company had a watchman in the yard; that "an old fellow" was the regular watchman, and the only one he had seen in the yard; that he could not say he had seen him checking cars but had seen him walking through the yard. Manifestly, the mere fact that foreman knew the company had a watchman and that he had seen him in the yard, was not sufficient to cast upon the crew the duty of ascertaining the whereabouts of the watchman before switching cars. The fact the standing cars were struck with great force may have been negligence, but it was not actionable negligence insofar as plaintiff was concerned, for the reason defendant owed no duty to plaintiff to make the coupling in any particular manner. [Karr v. Chicago, R. I. & P. Ry. Co., 108 S. W. (2d) 44, 49.]

Considering the facts stated and leaving out of view the fact

plaintiff was a watchman, the rule announced in the case of Lovell v. Kansas City Southern Ry. Co., 121 Mo. App. 466, 97 S. W. 193, is the rule applicable in the instant case. In that case the court held that striking a car which had been "spotted" upon a switch track with such force that a person lawfully in the car was injured was not negligence in the absence of knowledge, either actual or constructive that a person was in the standing car.

It is the rule in this State "that a railroad employee working on or about the tracks is under a duty to look out for his own safety and that the employees of the railroad engaged in the operation of trains owe him no duty to look out for him or take measures for his protection unless and until they discover him in a position of peril. . . ." [Karr case, *supra*, 49.]

We think the defendant owed to plaintiff the same duty it owed to its employees who worked upon the tracks. There was no evidence showing the switching crew or had cause to believe that moving the standing cars would injure plaintiff. In the absence of such showing, the plaintiff failed to make a case for the jury.

Having arrived at the conclusion plaintiff failed to show actionable negligence on the part of defendant, it is not necessary to determine whether plaintiff was guilty of contributory negligence, as a matter of law.

The judgment is reversed. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is reversed. All concur.