2011 WY 106

ELK RIDGE LODGE, INC., a Wyoming corporation, Appellant (Plaintiff/Third–Party Defendant),

v.

George M. SONNETT, Jr. and Wendy Z. Burgers–Sonnett, husband and wife, Appellees (Defendants/Third–Party Plaintiffs).

George M. Sonnett, Jr. and Wendy Z. Burgers–Sonnett, Appellants (Defendants/Third–Party Plaintiffs),

v.

Daniel Fox and Terry Reach, as individuals d/b/a Elk Ridge Lodge, Inc.; and Elk Ridge Lodge Inc., a Wyoming corporation, Appellees (Third–Party Defendants).

Nos. S–10–0191, S–10–0192.

Supreme Court of Wyoming.

July 8, 2011.

Representing Elk Ridge Lodge, Inc.: Larry B. Jones and William L. Simpson, Burg, Simpson, Eldredge, Hersh & Jardine, PC, Cody, Wyoming.

Representing Sonnett: Wendy Z. Burgers–Sonnett and George M. Sonnett, Jr., Washington, Virginia.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   George M. Sonnett, Jr., and Wendy Z. Burgers–Sonnett purchased approximately twenty acres of land and improvements in Sublette County, Wyoming, from Elk Ridge Lodge, Inc.   To finance part of the purchase price, the Sonnetts gave Elk Ridge a promissory note secured by a mortgage on the property.   They later defaulted on the note, and Elk Ridge filed suit against the Sonnetts seeking judgment and foreclosure on the property.   The Sonnetts responded with counterclaims against Elk Ridge.   Both parties filed competing motions for summary judgment.

[¶ 2]   The district court granted summary judgment in favor of Elk Ridge on its foreclosure claim, and against the Sonnetts on their counterclaims.   In Docket No. S–10–0192, the Sonnetts appeal that decision.   The district court also denied Elk Ridge's request for attorneys' fees and costs pursuant to the terms of the promissory note and mortgage. In Docket No. S–10–0191, Elk Ridge appeals that decision.   We will affirm the district court's decisions in both appeals.

### ISSUES

[¶ 3]   The Sonnetts present these three issues in Docket No. S–10–0192:

1.   Did the district court err in granting summary judgment to Elk Ridge, and in denying summary judgment to the Sonnetts, on the Sonnetts' counterclaim of breach of warranty (breach of the implied covenant against encumbrances), ruling, as a matter of law, that language contained in the deed of conveyance excluded a recorded encumbrance from Elk Ridge's warranty.

2.   If the district court erred under issue 1, did the district court also err in granting

summary judgment on Elk Ridge's claim for a money judgment and request for a decree of foreclosure where the Sonnetts' counterclaim may diminish or defeat Elk Ridge's claim?

3. Did the district court err by granting summary judgment to Elk Ridge on its request for the equitable relief of foreclosure where the Sonnetts invoked equity in defense and where the court made no findings as to the equities?

In Docket No. S–10–0191, Elk Ridge asserts a single issue:

The decision of the trial court, in denying Elk Ridge Lodge, Inc.'s motion for attorneys' fees and costs, was an abuse of discretion.

## FACTS

[¶ 4] Harold and Leda Reach owned a substantial tract of property in Sublette County, Wyoming. In 1989, they applied to the county to change the zoning on a twenty-acre parcel of that property from Agricultural to Recreational, with the stated purpose of developing a lodge for resort use. In order to gain approval of the application during the hearing process, the Reaches offered a set of restrictive covenants entitled the "Proposed Masterplan of Elk Ridge Lodge Development." This proposed Master Plan restricted the use and development of the property more than the standard limitations placed on property with Recreational Zoning. The County accepted the Master Plan and approved the zoning change application. The Master Plan and the County's resolution approving the zoning change were recorded with the County Clerk in Sublette County's property records.

[¶ 5] The Reaches later sold the twenty-acre parcel to Elk Ridge Lodge, Inc., a corporation owned by their son, Terry Reach, and another person, Daniel Fox. In the fall of 1989, Elk Ridge began operating a resort facility on the property, offering lodging, a restaurant with a beer liquor license, gaso-line sales, outfitting, and a gift shop. Over the next several years, Elk Ridge made several improvements to the property, and continued operating the resort lodge.

[¶ 6] In the Spring of 2001, Elk Ridge entered into a contract to sell the property to the Sonnetts. Prior to closing, the Sonnetts obtained title insurance. The policy listed a number of easements and other restrictions on the property, but did not mention the Master Plan. The Sonnetts contend that they were unaware of the existence of the Master Plan. The Sonnetts further contend that Elk Ridge had been operating the resort lodge for several years in a manner consistent with its Recreational Zoning, but contrary to some of the restrictions contained in the Master Plan.

[¶ 7] The Sonnetts learned of the Master Plan in 2006. In May of that year, they received a letter from the county informing them that they were violating the Master Plan by offering a restaurant and tavern to the public, renting snowmobiles, and plowing the property's driveway to allow public access during the winter. In subsequent correspondence with the county, the Sonnetts were informed that they could face substantial penalties if they failed to comply with the Master Plan. Based on their perception that the lodge could not be operated successfully within the limitations of the Master Plan, the Sonnetts closed the lodge in the summer of 2007.

[¶ 8] The Sonnetts did not make the payment due to Elk Ridge under the promissory note on June 1, 2008. After providing notice and a demand for payment to the Sonnetts, Elk Ridge filed an action to collect on the promissory note and foreclose on the mortgage. In defense, the Sonnetts filed several counterclaims against Elk Ridge, based on allegations that the Master Plan was an encumbrance that Elk Ridge had not disclosed to the Sonnetts, in violation of the covenants of the Warranty Deed by which Elk Ridge conveyed the property to the Sonnetts.[1] The

1. The Sonnetts filed counterclaims against Elk Ridge encompassing several theories in addition to breach of the covenants of the Warranty Deed, including intentional or negligent misrepresentation, fraud, promissory estoppel, and unjust en-richment. Their brief makes it plain that their appeal extends only to the claim based on the theory of breach of the covenants of the Warranty Deed. The case also encompassed a substantial number of additional claims, including, for

Sonnetts also filed third party claims against the owners of Elk Ridge, Mr. Reach and Mr. Fox. The district court entered summary judgment in favor of Elk Ridge and against the Sonnetts, a decision the Sonnetts challenge on appeal.[2] Elk Ridge appeals the district court's subsequent denial of its request for attorneys' fees and costs.

## DISCUSSION

### Docket No. S–10–0192—Summary Judgment

[¶ 9] We review a district court's decision to grant or deny summary judgment using this standard:

> Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002). "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Id.* Because summary judgment involves a purely legal determination, we undertake *de novo* review of a trial court's summary judgment decision. *Glenn v. Union Pacific R.R. Co.*, 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo.2008).

*Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC*, 2008 WY 101, ¶ 8, 191 P.3d 125, 128–29 (Wyo.2008). We view the record in the light most favorable to the party opposing summary judgment, giving that party the benefit of all favorable inferences reasonably drawn from the record. Any doubts about the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. *Wyoming Board of Land Comm'rs v. Antelope Coal Co.*, 2008 WY 60, ¶ 7, 185 P.3d 666, 668 (Wyo.2008).

[¶ 10] The party moving for summary judgment bears the initial burden of establishing a *prima facie* case with admissible evidence. *Kruckenberg v. Ding Masters, Inc.*, 2008 WY 40, ¶ 20, 180 P.3d 895, 901 (Wyo.2008). Our review of the record confirms the district court's ruling that Elk Ridge established its *prima facie* case for summary judgment on its foreclosure claim. The district court, citing 55 Am.Jur.2d *Mortgages* § 664 (1996), identified the necessary elements of a foreclosure claim as "(a) the agreement; (b) a default; (c) a notice of default and declarations thereof; and, (d) the amount due." After thorough review of the materials submitted in support of, and in opposition to, Elk Ridge's motion for summary judgment, the district court found in its decision letter that:

> [Elk Ridge] has shown, and Sonnetts have admitted: (a) the promissory note in the amount of $495,000.00 and mortgage covering the property executed by Sonnetts in favor of [Elk Ridge], including recording of the mortgage in the official records of Sublette County, Wyoming, on May 26, 2004; (b) the failure to pay [Elk Ridge] by Sonnetts; and (c) Sonnetts' receipt of the notice of default, coupled with Sonnetts' failure to cure default.

(Internal footnote omitted.) The district court further found that the undisputed amount due was $535,000.00 in principal and interest as of June 1, 2008, with 8% interest on that amount to accrue from that date until the date of judgment.

[¶ 11] The Sonnetts do not dispute these facts, and indeed, admitted nearly all of them in their answer to Elk Ridge's foreclosure complaint. They do not dispute the district court's list of the elements of foreclosure or any other aspect of the district court's legal analysis of the foreclosure claim. The Sonnetts assert, however, that summary judgment in favor of Elk Ridge was precluded by their counterclaim against Elk Ridge for breach of the covenants of the Warranty

---

example, claims by Elk Ridge and the Sonnetts against other mortgage and lien holders. None of these additional claims are at issue.

**2.** The Sonnetts have not appealed the district court's decision granting summary judgment in favor of Mr. Reach and Mr. Fox. These third party claims are mentioned in the discussion of facts only because they are involved in Elk Ridge's appeal of the denial of its attorneys' fees.

Deed conveying the property from Elk Ridge to the Sonnetts.

[¶ 12] It is undisputed that Elk Ridge conveyed the property to the Sonnetts by Warranty Deed.[3] A Warranty Deed includes the covenant that the property conveyed is "free from all incumbrances." Wyo. Stat. Ann. § 34-2-103 (LexisNexis 2009). "Consequently, any encumbrance[ ] on the seller's title needs to be specifically listed and excluded from the warranty. Otherwise, the seller will be in breach of the warranty." *Foxley & Co. v. Ellis,* 2009 WY 16, ¶ 28, 201 P.3d 425, 432 (Wyo.2009). Elk Ridge's Warranty Deed did not specifically list and exclude the Master Plan. The Sonnetts contend that the Master Plan is an encumbrance,[4] and therefore, that Elk Ridge breached its warranty.

[¶ 13] While Elk Ridge's Warranty Deed does not specifically list and exclude the Master Plan, it more generally states that the deed is "SUBJECT TO reservations and restrictions contained in the United States patents or other matters of public record, to easements and rights-of-way of record or in use and to prior mineral reservations of record." Interpreting this provision of the Warranty Deed, the district court concluded that

> no ambiguity exists and the parties' intent is manifested. Title in fee was conveyed. The "reservations and restrictions" clause is also clear. The Deeds evidence the intent of [the] Sonnetts and [Elk Ridge] that [Elk Ridge] did not warrant title against, among other things, "other matters of public record."

[¶ 14] We agree with the district court that this provision of the Warranty Deed is clear and unambiguous. Both in the district court and on appeal, the Sonnetts' arguments that the language is ambiguous, or should be interpreted some other way, are unconvincing, in large part because they do not suggest any plausible alternative interpretation. The Warranty Deed expressly excludes matters of public record.[5] It is undisputed that the Master Plan, having been recorded and indexed in the Sublette County property records, is "of public record." We, therefore, uphold the district court's conclusion that the Sonnetts' breach of warranty claim is not viable, and that Elk Ridge was entitled to summary judgment on that claim. With regard to the Sonnetts' first issue, we conclude that the district court did not err in granting summary judgment to Elk Ridge, and in denying summary judgment to the Sonnetts, on the Sonnetts' counterclaim of breach of warranty.

[¶ 15] As presented by the Sonnetts, their second issue arises only if we reverse the district court's grant of summary judgment in favor of Elk Ridge. Because we uphold that decision, we need not reach the Sonnetts' second issue.

[¶ 16] In their third issue, the Sonnetts point out that foreclosure is equitable relief, and that they "invoked equity in defense" of Elk Ridge's foreclosure claim. The Sonnetts contend that it was error for the district court to grant foreclosure to Elk Ridge without making specific findings "as to the equities." The Sonnetts contend that a "lack of rulings in the record on the equities is disfavored," citing *Beaulieu v. Florquist,* 2004 WY 31, ¶ 21, 86 P.3d 863, 870 (Wyo. 2004), *overruled on other grounds by Brown*

---

3. Elk Ridge actually executed both a Warranty Deed and a Supplemental Warranty Deed to the Sonnetts, the latter containing provisions meant to bring about certain tax consequences. For purposes of these appeals, however, the pertinent language is the same in both deeds, and the distinctions are of no consequence.

4. To the extent that the Master Plan is a zoning restriction, it may not be an encumbrance subject to the covenants of a Warranty Deed. Zoning represents a governmental entity's exercise of its police powers. 83 Am.Jur.2d *Zoning and Planning* § 6, at 52 (2003). In contrast, an encumbrance is "any right or interest existing in a third person which diminishes the value of the estate

to the grantee." *Foxley,* ¶ 31, 201 P.3d at 432. The parties have not expressly raised this point or addressed it in their briefs. For purposes of this case, we will accept, without deciding, the Sonnetts' contention that the Master Plan is an encumbrance.

5. Our reading of other cases involving Warranty Deeds suggests that the exclusion of matters of public record is a common practice. *See, e.g., Foxley,* ¶ 29, 201 P.3d at 432 (the Sellers "conveyed their property 'subject only to ... easements, restrictive covenants, and reservations of record.'").

*v. City of Casper*, 2011 WY 35, ¶ 44, 248 P.3d 1136, 1147 (Wyo.2011). In that case, the Beaulieus had raised equitable arguments before the district court. We wrote:

> The district court did not rule directly on any of the equitable defenses, but the grant of summary judgment to the [Florquists] clearly incorporated a ruling against the Beaulieus on these theories. Although we would prefer that the record contain specific rulings on each issue, we will affirm the district court because the record does not support the applicability of equitable estoppel, waiver or laches.

*Beaulieu*, ¶ 21, 86 P.3d at 870. We find ourselves in a nearly identical situation in these appeals. The Sonnetts are correct that the district court did not make a separate ruling on their equitable defenses to foreclosure. However, it is apparent that the district court's grant of summary judgment in favor of Elk Ridge implicitly ruled against the Sonnetts on these defenses. The Sonnetts' equitable defenses were variations on their counterclaim that Elk Ridge wrongfully failed to disclose the existence of the Master Plan. As we have concluded that Elk Ridge's nondisclosure did not violate the covenants of the Warranty Deed, we also conclude that the record does not support the applicability of the Sonnetts' equitable defenses.

### Docket No. S–10–0191—Attorneys' Fees

[¶ 17] We review a district court's grant or denial of attorneys' fees and costs for abuse of discretion. *Mueller v. Zimmer*, 2007 WY 195, ¶ 11, 173 P.3d 361, 364 (Wyo.2007). The ultimate question is whether the district court could reasonably conclude as it did. *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 149, 226 P.3d 889, 935 (Wyo.2010).

[¶ 18] The mortgage provided that Elk Ridge "may enforce the provisions of, or foreclose this Mortgage by any appropriate suit, action or proceeding at law or in equity or by advertisement and sale as provided by Wyoming Statutes." It further provided that the Sonnetts "agree to pay all costs of enforcement and of foreclosure, including reasonable attorney's fees." The promissory note includes a provision to the same effect.

Based on these provisions, the district court, upon granting summary judgment in favor of Elk Ridge, decreed that Elk Ridge was "entitled to its costs and fees, including reasonable attorneys['] fees, in an amount to be later shown."

[¶ 19] Approximately two weeks later, Elk Ridge filed a motion for attorneys' fees, supporting it with an affidavit of counsel and billing statements. The Sonnetts filed objections, the major thrust of which was that Elk Ridge might be entitled to attorneys' fees for prosecuting the foreclosure claim, but there was no statutory or contractual provision that entitled Elk Ridge to attorneys' fees for defending the Sonnetts' counterclaims against Elk Ridge or their third party claims against the two shareholders of Elk Ridge. In response, Elk Ridge acknowledged the general rule that a party may recover attorneys' fees only on claims directly subject to attorneys' fees provisions, and that a party is responsible for separating out attorneys' fees incurred on any additional claims. *Mueller*, ¶ 15, 173 P.3d at 365. Elk Ridge further asserted, however, that when the additional claims are "inextricably linked" to a claim for which attorneys' fees are recoverable, then "fees are recoverable for defending those additional issues as well." *City of Gillette v. Hladky Construction, Inc.*, 2008 WY 134, ¶¶ 109–110, 196 P.3d 184, 212–13 (Wyo.2008); *Forshee v. Delaney*, 2005 WY 103, ¶ 16, 118 P.3d 445, 450 (Wyo.2005). Elk Ridge maintained that the counterclaims and third party claims brought by the Sonnetts "were all direct or indirect attacks on the validity of the Note and Mortgage," and all of the attorneys' fees were incurred in efforts to enforce the mortgage. According to Elk Ridge, the counterclaims and third party claims were inextricably linked to the foreclosure claim.

[¶ 20] The district court considered the pleadings and supporting materials, including proposed findings and conclusions submitted by both parties. After a hearing on the attorneys' fees dispute, the district court issued a thorough and thoughtful decision letter in which it reached a decision somewhere between the positions of the two parties. The district court generally adopted Elk Ridge's legal position that attorneys' fees

were recoverable on all claims "inextricably linked" to the foreclosure claim, adding that: "[S]egregation of fees between multiple clients and/or multiple claims is required when it is possible." *Cline v. Rocky Mountain, Inc.*, 998 P.2d 946, 952 (Wyo. 2000) (citing *Rocky Mountain Helicopters, Inc. v. Air Freight, Inc.*, 773 P.2d 911, 925 (Wyo.1989); *Miles v. CEC Homes, Inc.*, 753 P.2d 1021, 1027 (Wyo.1988)). Implicit in this directive is the requirement that a party must show segregation is impossible before he may recover for claims for which there is no authorization of fee shifting. *Jensen v. Fremont Motors Cody, Inc.*, 2002 WY 173, ¶ 33, 58 P.3d 322, 330 (Wyo.2002).

[¶ 21] Applying these legal concepts, the district court then made specific findings to support its decision. First, it found that Elk Ridge's defense of the Sonnetts' counterclaims were inextricably "intertwined and impossible to segregate from [Elk Ridge's] prosecution of the foreclosure action." In contrast, it found that the Sonnetts' third party claims against the two shareholders of Elk Ridge were separable, "and all fees and costs related to such must be segregated." It found that Elk Ridge had not "adequately and appropriately segregate[d] the hours worked, rate charged, and expenses incurred in defending issues against [Elk Ridge] and the Third–Party Defendants, Terry Reach and Daniel Fox, for piercing the corporate veil, intentional misrepresentation, fraud, and willful and wanton misconduct." The district court applied the rule that "[o]nce a party is given an opportunity to present sufficient evidence of attorneys' fees and fails to do so, the party will not be given another chance." *Ringolsby v. Johnson*, 2008 WY 127, ¶ 21 193 P.3d 1167, 1171 (Wyo.2008), citing *Pekas v. Thompson*, 903 P.2d 532, 537 (Wyo.1995). While noting the "harsh result," the district court denied Elk Ridge's request for attorneys' fees in its entirety.

[¶ 22] This, of course, is the ruling challenged by Elk Ridge on appeal. Its argument is essentially a reassertion that all of the counterclaims and third party claims were inextricably linked and impossible to separate from its foreclosure claim. We have carefully reviewed the district court's ruling, and can find no error in its careful adherence to Wyoming precedent regarding the award of attorneys' fees. Based on our review of the record, we readily agree with the district court's ruling that the Sonnetts' counterclaims against Elk Ridge were inextricably intertwined with Elk Ridge's foreclosure claim. The situation is much like that in *Forshee*, ¶ 16, 118 P.3d at 450, where we stated, that, "[h]ad Forshee been successful in his counterclaim, his damages would have offset the amount he owed to Delaney, rendering his counterclaim a necessary aspect of Delaney's suit to collect the past due invoices." Not only would the Sonnetts' counterclaims against Elk Ridge have been an offset if successful, but in addition, the Sonnetts asserted their counterclaims against Elk Ridge as equitable defenses to the foreclosure claim.

[¶ 23] It is a much closer question whether the district court erred in finding that the Sonnetts' third party claims against Mr. Reach and Mr. Fox were not inextricably linked to the foreclosure claim. On one hand, the third party claims were made against Mr. Reach and Mr. Fox in their personal capacities, making them distinct and separate clients from Elk Ridge. The Sonnetts pleaded two claims against Mr. Reach and Mr. Fox that they did not bring against Elk Ridge, namely "piercing the corporate veil" and "willful and wanton misconduct." They pleaded five claims against Elk Ridge that were not pursued against Mr. Reach and Mr. Fox, namely "breach of covenants contained in the deed," "consequential damages," "promissory estoppel," "breach of covenant of good faith and fair dealing," and "unjust enrichment." These considerations suggest that the Sonnetts' third party claims against Mr. Reach and Mr. Fox might reasonably be separated from Elk Ridge's foreclosure claim. On the other hand, while there are distinctions among the various claims, they all arise from the same transaction, that is, Elk Ridge's sale of the property to the Sonnetts without disclosing the existence of the Master Plan. In addition, Elk Ridge is a closely held corporation, with Mr. Reach and Mr. Fox the only shareholders. The close identity of the parties and the

overlapping of the basic facts supporting the third party claims suggest that the Sonnetts' counterclaims against Mr. Reach and Mr. Fox were inextricably intertwined with Elk Ridge's foreclosure claim.

[¶ 24] Under the applicable standard of review, the ultimate question is not whether we agree with the district court, but whether the district court could reasonably conclude as it did. *Ultra Resources,* ¶ 149, 226 P.3d at 935. In this case, the district court presided over this litigation for nearly a year and a half before reaching its decision to deny Elk Ridge's motion for attorneys' fees. It had held numerous hearings and decided many different motions. On appeal, we can only review the written record. Under the circumstances, it is apparent that the district court was in a better position than we are to decide whether the Sonnetts' third party claims against Mr. Reach and Mr. Fox were inextricably intertwined with Elk Ridge's foreclosure claim. *Compare City of Gillette,* ¶ 115, 196 P.3d at 213, in which we deferred to a district court's decision regarding attorneys' fees, noting that it had "presided over this matter for several months before trial during which time it heard and decided numerous motions. It then presided over the five week trial when it considered and decided the parties' motions." We cannot conclude that the district court's decision was beyond the bounds of reason, and therefore, we cannot reverse its decision to deny Elk Ridge's request for attorneys' fees.

[¶ 25] We affirm the district court's decisions in both Docket No. S–10–0191 and Docket No. S–10–0192.